

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

WMN/DAS:SD/PEN/TMM　　　　　　*271 Cadman Plaza East*
F.#2010R0006　　　　　　　　　　*Brooklyn, New York 11201*

September 13, 2011

By Hand Delivery & ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

　　　　Re:　United States v. Victor D'Acosta Bourne, et al.
　　　　　　Criminal Docket No. 08-888 (S-4)(NGG)

Dear Judge Garaufis:

　　　By this letter, the government respectfully submits the following motions in limine in connection with trial in the above-referenced matter, which is scheduled to commence on September 26, 2011. The government respectfully requests: (1) that the Court admit statements of the defendant Victor Bourne contained within letters he wrote to co-defendant Maria Alleyne after his arrest and statements Bourne made to a co-conspirator ("CW") concerning the role of Alleyne in the money laundering conspiracy and (2) that the Court preclude the defendant from presenting arguments or eliciting testimony that would invite the jury to question the government's motive in charging Alleyne.

I.　　The Government Seeks to Admit Statements and Admissions of Bourne Contained Within Letters to Alleyne and Made to a Cooperating Witness

　　　The government intends to introduce at trial letters Bourne wrote to Alleyne after his arrest. The letters were recovered during the execution of a search at Alleyne's residence. In the letters, Bourne made statements concerning the money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h), for which Bourne and Alleyne are charged in the above-referenced indictment (Count Twelve of the superseding indictment). The government also intends to introduce through the testimony of CW statements Bourne made to CW during the course of the said conspiracy. Specifically,

Bourne told CW that he purchased commercial assets with narcotic proceeds and placed the assets under his mother's name. All statements discussed herein are admissible on two separate bases. First, Bourne's statements in the letters and to CW are admissible against Bourne as statements of a party-opponent, pursuant to Federal Rule of Evidence ("Rule") 801(d)(2)(A). Second, both the letters and Bourne's statements to CW were statements made by Bourne to other co-conspirators during the course of the money laundering conspiracy to which Bourne and Alleyne are charged and are admissible against Alleyne pursuant to Rule 801(d)(2)(E). Third, those letters and statements are admissible against Bourne and Alleyne as statements against penal interest pursuant to Rule 804(b)(3).

   A.   Applicable Law

   Generally, hearsay statements are not admissible as evidence at trial. See Fed. R. Evid. 802. Pursuant to Rule 801(d)(2)(A), however, "[a] statement is not hearsay if – [t]he statement is offered against a party and is (A) the party's own statement[.]" Fed. R. Evid. 801(d)(2)(A).

   Rule 801(d)(2)(E) excludes from the definition of hearsay "statement[s] by a coconspirator of a party during the course and in furtherance of the conspiracy." To be admissible under Rule 801(d)(2)(E), the court must make two findings by a preponderance of the evidence, "'first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy.'" United States v. Desena, 260 F.3d 150, 157-58 (2d Cir. 2001) (quoting United State v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999)). "In determining whether a conspiracy existed, the district court may consider the hearsay statement itself, but there must be some independent corroborating evidence of the defendant's participation in the conspiracy." DeSena, 260 F.3d at 158 (internal citations and quotation marks omitted).

   When a declarant is unavailable, Rule 804(b)(3) excepts from the hearsay rule "[a] statement which . . . at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Admission of such statements "hinges on whether the statement was sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." See United States v. Williams, 506 F.3d 151, 155 (2d Cir. 2007) (quoting Williamson v. United States, 512 U.S. 594, 603-04 (1994)(internal quotation marks omitted).

The fact that a statement is admissible under the Rules does not end the court's inquiry because the Confrontation Clause may still be violated and the statements should not be admitted. In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the admission of out-of-court "testimonial" statements offered for the truth of the matter asserted violates the Confrontation Clause when the defendant has had no opportunity for cross-examination, even if the statements are admissible according to the requirements of hearsay rules. See Crawford, 541 U.S. at 68. Of course, not every "out-of-court" statement is "testimonial." Statements such as those made in business records and in furtherance of a conspiracy are non-testimonial. See id. at 56.

Post-Crawford cases have further distinguished between testimonial and non-testimonial statements. See, e.g., United States v. Feliz, 467 F.3d 227, 235 (2d Cir. 2006) (holding autopsy reports non-testimonial); United States v. Goldstein, 442 F.3d 777, 785 (2d Cir. 2006) (finding customer credit-card "chargeback" complaints to allegedly fraudulent business were non-testimonial); United States v. Saget, 377 F.3d 223, 228-30 (2d Cir 2004) (finding that a defendant's co-conspirator statements to an undercover informant were not testimonial because "testimonial" statement means "a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect his or her responses might be used in future judicial proceedings."); United States v. Morgan, 385 F.3d 196, 209, n.8 (2d Cir. 2004) (letter from defendant's co-conspirator to co-conspirator's boyfriend was not testimonial). If a statement is non-testimonial, the Confrontation Clause is not implicated and a court need only engage in the regular analysis for admitting hearsay statements under the rules of evidence. See Davis v. Washington, 547 U.S. 813, 821 (2006) (finding "it is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, it is not subject to the Confrontation Clause").

Even if a hearsay statement is otherwise admissible under the rules of evidence, if it involves a "co-defendant" admission, it must be analyzed under Bruton v. United States, 391 U.S. 123 (1968). In Bruton, the Supreme Court held that, at a joint trial, a defendant's Confrontation Clause rights were violated by admission of a co-defendant's confession to law enforcement that implicated the defendant. Bruton, 391 U.S. at 135-36. Admission of a co-defendant's confession may violate Bruton where the accusation against the defendant is only

implicit, as where the prosecution elicits testimony that the co-defendant's confession led police to arrest the defendant. See Ryan v. Miller, 303 F.3d 231, 248-49 (2d Cir. 2002). There is no violation of Bruton where the co-defendant who made the confession testifies at trial and is subject to cross-examination by the defendant and where the co-defendant's testimony would have been relevant and admissible against the defendant in a separate trial. See United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999).

    B.   Argument

        1.   Statements Contained Within the Letters to Alleyne Are Admissible

On October 14, 2010, a search warrant was executed at Alleyne's home located on Linden Boulevard in Brooklyn, New York. During the search, numerous financial documents were recovered, as well as letters written by Bourne to Alleyne from the time of his arrest in June 2009 until Alleyne's arrest in October 2010.[1] See Attached letters as Exhibit A and B ("Ex.") (with portions sought to be introduced by the government highlighted). The government intends to introduce relevant portions of these letters, which are admissible as Bourne's inculpatory statements concerning the crimes charged and as statements in furtherance of the money laundering conspiracy between Bourne and Alleyne.

The evidence elicited at trial will show that the defendant Victor Bourne purchased numerous properties and businesses in Brooklyn and Barbados and placed them in the names of family members, including Alleyne and his sister, Lynette Bourne. The purpose of these transactions was to hide Bourne's ownership of the properties and to maintain a facade of legitimacy through which narcotics proceeds were funneled. In the letters at issue, Bourne discussed his ownership and control of these properties and businesses and gave Alleyne directions for the management of the assets.

For example, in Exhibit A, a letter sent to Alleyne on February 8, 2010, Bourne referred to several properties and businesses ostensibly owned by Alleyne, including two shoe stores named "Catz" and "Gotya." In addition, Bourne discussed a property located on Flatbush Avenue in Brooklyn, a reference to 604-604A Flatbush Avenue, for which Alleyne is the owner of record, and a property he was attempting to purchase in Barbados,

---

[1] On September 13, 2011, the Court will conduct a hearing concerning the validity of the search.

5

identified as "Bay Street." See Ex. A.[2] In the letters, Bourne directed Alleyne to obtain a loan to finish the construction of the Flatbush Avenue property and use profits from Gotya to finance the purchase of Bay Street. Bourne also instructed Alleyne to "[l]ock on paper," another property in Barbados referred to as St. Lucy. Morever, in Exhibit B, Bourne gave Alleyne directions on the management of a liquor store purportedly owned by Lynette Bourne, instructing Alleyne to send an individual to purchase liquor on Long Island. Additionally, Bourne warned that when released from jail, he was, "[n]ot going to carry anyone on his back," indicating that prior to his incarceration, Bourne's family relied on Bourne for financial support. Evidence at trial will show that the source of this support was Bourne's drug trafficking proceeds.

Bourne's statements in the letters, which were made prior to his and Alleyne's indictment for money laundering, are clearly in furtherance of the money laundering conspiracy. The portions of the letters which the government seeks to introduce at trial demonstrate Bourne directing Alleyne regarding the maintenance and disposition of the assets, which were part of his money laundering scheme. The money laundering conspiracy as charged in the superseding indictment lasted from in or about and between January 2000 through October 2010, within the time period when Bourne wrote the letters. Accordingly, Bourne's statements should be admitted against Bourne and Alleyne pursuant to Federal Rule 801(d)(2)(E) as statements in furtherance of the conspiracy.

Additionally, as Bourne admitted to his ownership and control over the illegally laundered assets, they constitute statements against Bourne's penal interest under Rule 804(b)(3). At minimum, Bourne's letters should be admitted against Bourne as admissions of a party-opponent under Rule 801(d)(2)(A).

Moreover, because Bourne was not aware that these letters might later be used at a trial, as evidenced by his direction to Alleyne to "tear up the letters," these statements are not testimonial in nature. See Ex. B. Accordingly, any Confrontation Clause challenge fails. See United States v. Logan, 419 F.3d 172, 178 (2d Cir.2005) ("In general, statements of co-conspirators in furtherance of a conspiracy are non-testimonial."). In Morgan, the Second Circuit held that a letter from defendant's co-conspirator to another co-conspirator's boyfriend was admissible. In citing United States

---

[2] A record search indicates this is the only property on Flatbush Avenue owned by a member of the Bourne family.

v. Matthews, 20 F3. 538, 545-46 (2nd Cir. 1944), the Court recognized that:

> On the other hand, if the statement is made to a person whom the declarant believes is an ally rather than a law enforcement official, and if the circumstances surrounding the portion of the statement that inculpates the defendant provide no reason to suspect that the inculpatory portion is any less trustworthy than the part of the statement that incriminates the declarant, the trustworthiness of the portion that inculpates the defendant may well be sufficiently established that its admission does no violate the Confrontation Clause.

Id. Similarly, because these statements in the letters in this case were not made to law enforcement as a confession, there is no Bruton violation. See Bruton, 391 U.S. at 135-36.

Finally, Rule 801(d)(2) precludes Bourne from admitting those portions of the letters which include his exculpatory statements. See United States v. Wilkerson, 84 F.3d 692. 695 (4th Cir. 1996) (noting that during direct examination, the government could have introduced inculpatory statements made by the defendant but also recognizing that the Federal Rules of Evidence do not provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party); see also Fed. R. Evid. 801, 803, 804. Nor does the government's presentation of portions of the letters make his other statements admissible under the rule of completeness. In order to introduce statements under the rule of completeness, a defendant must make a proper showing that the statements he seeks to introduce have a separate basis for admission. See United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) (rejecting claim under the completeness doctrine that a statement made by the defendant could be admitted because the statement followed an inculpatory admission and noting that "the portions of the tape proffered by [the defendant] consisted largely of [his] own self-serving statements, which, as offered by him, are inadmissible hearsay"); see also United States v. Mahaffy, Crim. No. 05-613 (ILG), 2007 WL 1094153, at *3-*5 (E.D.N.Y. Apr. 10, 2007) (refusing to permit introduction of excerpts of defendant's prior statements because they were "otherwise inadmissible hearsay statements" that were "self-serving" and "exculpatory"). Accordingly, the defense should be precluded from offering the self-serving hearsay statements of the defendant either independently or in response to the

6

7

government's introduction of the defendant's incriminating statements.

### 2. Statements to a Cooperating Witness Are Admissible

Beginning in the latter part of 2006 until Bourne's arrest in 2009, CW and Bourne conspired to import shipments of marijuana from Jamaica to Barbados, a scheme which reaped hundred of thousands of dollars in illegal profits. As part of this scheme, Bourne and Alleyne shipped containers of goods from a store in New York (purportedly owned by Alleyne) to a store in Barbados (also purportedly owned by Alleyne). En route to Barbados, the containers were waylaid in Jamaica where CW and Bourne had arranged for corrupt dock workers to hide marijuana in the containers so that it could be delivered, along with Bourne's shoes, to Barbados. CW assisted Bourne in laundering the illegal profits of this scheme.

During the course of the conspiracy, Bourne and CW had numerous conversations about Bourne's drug trafficking activities in the United States and Barbados. In several conversations, Bourne and CW discussed Bourne's finances, including real estate transactions in Barbados and the United States and businesses Bourne owned in both countries. Specifically, CW learned that Bourne owned the shoe business and several commercial real estate properties in the United States. Additionally, in sum and substance, Bourne told CW that he earned most of his money through narcotics trafficking.

Knowing that Bourne was an American Airlines employee at John F. Kennedy Airport with a marginal salary, CW, a money launderer, became concerned that Bourne might be exposing himself (and, in turn, CW) to scrutiny by law enforcement if Bourne did not properly hide his ownership of these assets. During one meeting, CW asked Bourne how he was reflecting the ownership of these substantial commercial assets on his tax returns. In sum and substance, Bourne told CW that he did not need to worry about his tax returns, because these properties were listed in his mother's name.

Here, Bourne's statements to CW about his narcotics trafficking activities and illegal profits, his ownership of commercial real estate properties that he purchased with narcotics proceeds, and the manner in which he hid his narcotics proceeds from law enforcement (by putting properties he owned in Alleyne's name) are admissible against Bourne as admissions against his penal interest under Rule 804(b)(3). The are also admissible against Bourne as admissions by a party opponent under Rule 801(d)(2)(A).

8

As a declaration against penal interest, under Rule 804(b)(3), Bourne's statements to CW are also admissible against Alleyne, as the statement inculpated both Bourne and Alleyne. See United States v. Sasso, 59 F.3d 341, 348-349 (2nd Cir. 1995) (admitting statements made to a girlfriend that implicated the declarant and another named individual in the conspiracy); see also United States v. Taco, 200 F.3d 401, 415 (2nd Cir. 2000) (admitting statement made to declarant's son that implicated declarant and other named individuals in the conspiracy; United States v. Robbins, 197 F.3d 829, 930-940 (7th Cir. 1999)(admitting statement into evidence that was made to declarant's finance and confidante that implicated declarant and another equally in selling marijuana).

In holding that statements by a declarant that inculpate another party are admissible under Rule 804(b)(3) against the other party, the Second Circuit stated in Sasso that:

> A statement incriminating both the declarant and the defendant may possess adequate reliability if (a) the statement was made to a person whom the declarant believes is an ally, not a law enforcement official, and (b) the circumstances surrounding the portion of the statement that inculpates the defendant provide no reason to suspect that that portion is any less reliable than the part the directly incriminates the declarant.

Id. Similarly, here, there is a sufficient indicia of reliability. Bourne equally inculpated himself in the criminal activity of money laundering and did not shift blame to Alleyne. Additionally, Bourne inculpated Alleyne at a time when he did not have to worry about being detected by law enforcement. There would be no reason to mention Alleyne other than to explain why Bourne did not have to worry about his tax returns. Finally, Bourne's statements to CW were in private. There was no indicia that, when Bourne made these statements to CW, law enforcement had any knowledge of his criminal actions.

Moreover, Bourne made these statements to CW, who was a fellow co-conspirator with Alleyne in Bourne's money laundering business. CW and Bourne had already successfully imported marijuana from Jamaica into Barbados and were planning future

9

shipments.[3]  The conversation during which Bourne informed CW that he hid all of his commercial real estate in his mother's name was initiated because of CW's concern that law enforcement would discover Bourne's drug trafficking and money laundering schemes through an investigation of Bourne's substantial real estate assets.  As such, CW intended to advise Bourne on how to conceal these properties in ways to avoid suspicion by law enforcement, if Bourne had indicated that these properties were in his own name.  CW also wanted to insure that Bourne was properly concealing the assets he purchased with narcotics proceeds so that CW's drug ventures with Bourne would continue.  Thus, Bourne's statements were made during the course of CW and Bourne's on-going drug trafficking conspiracy.  They also furthered the money laundering conspiracy in which Alleyne was a participant.  Thus, the statements are admissible against Alleyne as a co-conspirator's statement pursuant to Rule 801(d)(2)(E).

Furthermore, Bourne's statements to CW were clearly not made to law enforcement and, therefore, non-testimonial.  Therefore, they do not run afoul of Crawford.  See Saget, 377 F.3d at 228-30 (finding statements to a confidential informant, whose identity is unknown to the defendant does not constitute testimony).  Rather, they were made in furtherance of the conspiracy, and Bourne was not aware that these statements might later be used at trial. Saget, 377 F.3d at 228-30; see also Crawford, 541 U.S at 56 (finding statements in furtherance of a conspiracy can be non-testimonial).  Because Bourne's statement that he hid his assets in his mother's name is non-testimonial, it does not fall within the purview of the Confrontation Clause.  See Davis, 126 S.Ct at 2274-76.

Finally, Bourne's statements about his mother to CW does not implicate Bruton if offered at trial against Alleyne.  Bourne's statements were not a "confession" to law enforcement, but rather statements made to a co-conspirator in furtherance of the conspiracy.  Therefore Bruton is not implicated. United States v. Bruton, 391 U.S. 135-36.

II. **The Defendant Should Be Precluded from Arguing Retaliation as a Motive for Prosecution**

The government anticipates Alleyne may present arguments concerning the government's motivation for prosecuting

---

[3]  At a later date, Bourne and CW also discussed importing between 30 and 50 kilograms of cocaine from Trinidad into the United States.

her and the timing of her prosecution.[4]  For the reasons set forth below, the government respectfully seeks to preclude Alleyne from making such arguments on the grounds that they are irrelevant and have no bearing on the issues properly before the jury.

   A.   Relevant Facts

        On May 23, 2010, Alleyne was stopped by a Customs Border Protection ("CBP") officer at John F. Kennedy International Airport upon her arrival from Africa.  Prior to the CBP stop, a "look out" had been placed in the Treasury Enforcement Communication System ("TECS") indicating that Alleyne was a target of an investigation into structuring and money laundering.

        As a result of the stop, Alleyne was referred for a secondary inspection where a CBP officer recovered from her luggage two photographs: one photograph of Toni Mele and a second photograph of Patricia Notopoulos, the Assistant U.S. Attorneys assigned to prosecute Victor Bourne in United States v. Victor Bourne, CR-08-888.  Alleyne was also carrying the names of several of the federal judges who had presided over Bourne's case and the names of several government witnesses.  In addition, the CBP officer recovered an inmate card, which listed the name of a defendant who was incarcerated with Bourne, Alleyne's date planner and several other documents.  Several of these items were photocopied by the CBP officer.  When Alleyne was questioned about the photographs, she responded, in sum and substance, that the women in the photographs were the attorneys prosecuting her son.

        Alleyne later admitted, with an attorney present, that she had traveled to Africa to pay an individual to place a "hex" in the form of a witch doctor's curse on the Assistant U.S. Attorneys.  This information was corroborated by prison calls between Bourne and Alleyne where they discussed the payment of $1,000 dollars to "the man" in Africa.  In addition, she also

---

    [4] Under Fed. R. Crim. Pro. 12(b)(1), a defense based on "defects in the institution of the prosecution" must be raised before trial.  See United States v. Taylor, 562 F.2d 1345, 1355 (2d Cir.1977) (finding defense of selective prosecution waived because it was not raised prior to trial).  While Alleyne has not raised this as a defense, the government seeks to preclude any insinuation to the jury that she was a victim of selective prosecution.

11

stated she was paying the inmate to protect her son while he was incarcerated.[5]

Subsequent to this incident, Alleyne was indicted on October 6, 2010 and joined as a co-defendant to United States v. Bourne, 08 CR 888. The superseding indictment charged both Bourne and Alleyne with a structuring conspiracy, in violation of Title 18, United States Code, Section 371; and Alleyne with six substantive counts of structuring, in violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1).[6]

Because of the timing of the superseding indictment, the government anticipates that Alleyne may claim that the instant prosecution is in retaliation for the government's discovery of her "hex" activities.

B.   Argument

Any inquiry at trial that seeks to delve into the government's reasons for charging the defendant is improper because the legitimacy of the prosecution is an issue for the Court and not the jury. See United States v. Regan, 103, F.3d 1072, 1082 (2d Cir. 1997). Claims regarding the government's motivation in charging the defendant are essentially claims of selective or vindictive prosecution. See United States v. Stewart, No. 03 CR. 717, 2004 WL 113506, at *1 (S.D.N.Y Jan. 26, 2004)(finding that "arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant] as opposed to other individuals who may also have committed the crimes charged or similar crimes are essentially claims of selective prosecution.").

The Second Circuit has held that vindictive prosecution claims are for the Court to decide and not for the jury, and therefore are only permitted to be raised in pretrial proceedings, not at trial. United States v. Sun Myung Moon, 718 F.2d 1210, 1229 (2d Cir.1983) (citing United States v. Taylor, 562 F.2d 1345, 1356 (2d Cir.1977)); Guastella v. United States,

---

[5] The government does not intend to admit this evidence in its case in chief, but reserves the right to use this evidence on cross-examination or in a rebuttal case.

[6] On May 6, 2011, the grand jury returned a fourth superseding indictment which added one count of money laundering conspiracy as to Bourne and Alleyne, in violation of Title 18, United States Code, Section 1956(h).

12

2009 WL 1286382 (S.D.N.Y. May 8, 2009) ("a defendant must raise a selective prosecution claim before trial"); United States v. Abboud, 438 F.3d 554, 579-80 (6th Cir. 2006)("A defense of selective prosecution is a matter for the court, not the jury"); Fed. R. Crim. P. 12(b)(3)(a). That is because a selective or vindictive prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. See United States v. Armstrong, 517 U.S. 456, 463 (1996); see also United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983)("[T]he issue of selective prosecution is to be determined by the court as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crime for which she was charged.") (internal citations omitted). Moreover, the court's decision to preclude the defendant from raising such issues at trial does not violate a defendant's right to cross-examination or compulsory process because prosecutorial motives do not bear on the question of guilt or innocence. United States v. Simpson, 226 Fed. Appx. 556, 562 (6th Cir. 2007) (holding that the defendant's right to cross-examination or compulsory process were not violated, because claims of selective prosecution do not bear on the issue of the defendant's guilt or innocence, and are therefore not properly before the jury); United States v. Jones, 52 F.3d 924 (11th Cir. 1995).

      Here, any argument insinuated by Alleyne concerning the timing of the indictment lacks merit. While it is true that Alleyne was indicted subsequent to the discovery of her "hex" activities, she had been a target of a money laundering investigation for months prior. In fact, as part of the investigation concerning the structuring scheme, a grand jury sitting in the Eastern District of New York issued a subpoena to Alleyne for handwriting exemplars on April 19, 2010. Moreover, as set forth above, it is well-settled that a claim of vindictive prosecution is a pre-trial matter and is not properly before the jury because it raises an issue that is independent of the question of the defendant's guilt or innocence. Alleyne, therefore, should be precluded from presenting any such arguments concerning the government's motive for indicting her, or the timing of the indictment vis a vis the incident. See Regan, 103 F.3d at 1081.

III.  Conclusion

      For the reasons set forth above, the government respectfully requests (1) that the Court admit statements of the

13

defendant Victor Bourne contained within letters he wrote to co-defendant Maria Alleyne after his arrest and statements Bourne made to a CW concerning the role of Alleyne in the money laundering conspiracy and (2) that the Court preclude the defendant from presenting arguments or eliciting testimony that would invite the jury to question the government's motive in charging Alleyne

                                              Respectfully submitted,

                                              LORETTA E. LYNCH
                                              United States Attorney

                               By:   /s/_____
                                              Soumya Dayananda
                                              Toni M. Mele
                                              Patricia Notopolous
                                              Assistant United States Attorney
                                                  (718) 254-7996

cc:  Ephraim Savitt, Esq. (by email)
     Roger Stavis, Esq. (By email)