

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

ST:TMM
F.#2009R01111

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 16, 2011

**By Hand and ECF**

Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:  United States v. Victor D'Acosta Bourne, et al.
            Criminal Docket No. 08-888 (NGG)

Dear Judge Garaufis:

    The government respectfully submits this reply to Victor D'Acosta Bourne's submission, dated September 7, 2011 ("Bourne letter"), responding to the government's motion *in limine*, dated August 24, 2011.

    In its motion *in limine*, the government gave notice of its intent to introduce certain evidence at trial as part of its direct case.  Among the evidence the government sought to admit, were three large-scale shipments of marijuana from Jamaica to Barbados and one attempted shipment of cocaine to the United States.  The government argued this evidence is admissible both as direct proof of the charged schemes and admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. (See motion *in limine* at 3-9).

    In the Bourne letter, Bourne seeks to have the Court exclude this evidence, which he classifies as "other acts" evidence, on the basis that this evidence consists of uncharged conduct and is either not relevant to issues at the trial or overly prejudicial. (See Bourne letter at 2-7).  In the alternative, Bourne seeks to have the Court preclude the government from mentioning any of this evidence in its opening statement and "then [have the Court] conduct 'mini-hearings' outside the presence of the jury in order to generate a

sufficient record" to make a determination on the admissibility of this evidence. (<u>Id</u>. At 6-7). Because the evidence of the marijuana and cocaine shipments constitute direct proof of the charged crimes set forth in the superseding indictment, Bourne's arguments, which are premised on the theory that these are "uncharged crimes," are without merit. Accordingly, Bourne's request should be denied in its entirety and the Court should grant the government's motion *in limine* to admit this evidence.[1]

I. Relevant Factual Background

Between 2000 and 2009, while working as an American Airlines baggage handler assigned to John F. Kennedy International Airport ("JFK"), Bourne lead an international drug trafficking organization which imported cocaine into the United States from destinations in the Carribean. As part of the conspiracy, cocaine was hidden aboard American Airlines flights destined for JFK. Once the planes arrived at JFK, Bourne directed other corrupt baggage handlers to remove the cocaine from the planes and deliver this cocaine to him for distribution. Through his JFK drug smuggling operation alone, Bourne smuggled and distributed approximately 150 kilograms of cocaine between 2000 and 2009.

In addition to smuggling cocaine from the Carribean into JFK, starting in or about April 2009, Bourne sought other sources of supply for his drug business and began expanding his cocaine trafficking and importation network. In furtherance of this scheme, Bourne began arrangements for a large-scale shipment of approximately 30 to 50 kilograms of cocaine to be shipped from Trinidad to the United States.[2] This cocaine was to be placed inside of a cargo container in Trinidad and shipped to Port Elizabeth, New Jersey, where it was to be received by one of

---

[1] In its motion *in limine*, the government also sought to admit (1) Bourne's assault on Aaron Grieves; (2) Bourne's request of a cooperating witness to purchase a handgun and his possession of a handgun on three occasions; and (3) the disappearance of a member of Bourne's organization in Barbados in 2008. (motion *in limine* at 1). The Bourne letter also seeks to exclude this evidence. Because the government's motion *in limine* has already adequately addressed Bourne's challenges to this evidence, and it is not impacted by the fifth superseding indictment, the government will not repeat its arguments on these points herein.

[2] The Bourne letter incorrectly states that this cocaine was to be shipped to Barbados. (Bourne letter at 5-7).

Bourne's workers. The government expects the evidence to show that Bourne approached a confidential witness ("CW"), with whom Bourne had already been involved with since 2006 as part of on-going marijuana trafficking scheme, and asked CW for a contact at the port in Trinidad so that Bourne could successfully ship cocaine out of Trinidad and into the United States. CW is expected to testify that shortly thereafter CW reached out to his contact in Trinidad in an effort to further this narcotics transaction for Bourne. Ultimately, this transaction did not occur because of Bourne's arrest in June 2009.

Bourne's drug trafficking organization was also responsible for coordinating four large-scale shipments of marijuana between Jamaica and Barbados. This scheme involved Bourne arranging with a freight forwarding company, located in Queens, New York for cargo containers to be sent on a shipping line from New York to Barbados with a stopover in Jamaica so that marijuana could be carefully hidden inside the containers. In furtherance of this scheme, Bourne made arrangements for these marijuana transactions from the Eastern District of New York.

In the course of at least one such transaction, Bourne shipped marijuana in a container that had been sent by his shoe business in Brooklyn (Catz Footwear) to his business in Barbados (Gotya). These businesses in Barbados and Brooklyn were under his direct control. As noted in the government's motion *in limine*, on December 18, 2006, during a stopover in the United States, law enforcement agents at the Port of Miami seized one of Bourne's containers holding marijuana, that had been transported from Jamaica ("Miami seizure"). The government expects evidence at trial to demonstrate that this container had originated from New York, had a stopover in Jamaica and was ultimately destined for Barbados. At trial, CW is expected to testify that not only did Bourne arrange for the shipping of these containers from New

York but he also selected the shipping lines that these containers would travel.[3]

II. Discussion

The attempted shipment of cocaine into the United States and the four large-scale marijuana importations are all charged crimes in the superseding indictment. First, as to the attempted shipment of cocaine, the superseding indictment charges Bourne in Count One with a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848. As Violation One under Count One, Bourne is charged with a conspiracy to import cocaine between January 2000 and June 2009, in violation of Title 21, United States Code, Section 963.[4] As Violation Two, Bourne is charged with a conspiracy to distribute cocaine between January 2000 and June 2009, in violation of Title 21, United States Code, Section 846. Bourne's discussions and actions in attempting to secure a contact at the port in Trinidad so that Bourne could smuggle between 30 to 50 kilograms of cocaine out of Trinidad and into the United States, in order to supply his drug operation which was operated here in the Eastern District of New York, squarely falls within the charged continuing criminal enterprise.

Second, as to the four large-scale marijuana importations, as indicated above, Count One of the superseding indictment charges Bourne with a continuing criminal enterprise. Violation Five under that Count charges Bourne with an international marijuana distribution conspiracy, in violation of Title 21, United States Code, Section 963 and 959.[5] Violation Five encompasses all four large-scale marijuana shipments.

---

[3]  Moreover, CW is expected to testify that between 2007 and 2009, while engaging in an on-going narcotics conspiracy with Bourne, Bourne made several admissions to CW, including but not limited to statements about Bourne's drug business in the United States, real estate purchases Bourne engaged in with his drug money, and a seizure of cocaine at JFK. These admissions about his illegal narcotics and money laundering activities in the Eastern District of New York were made to CW while they were furthering additional drug activities.

[4]  Violation One is also charged as Count Two.

[5]  Violation Five is also charged as Count Six.

Specifically, the government expects the evidence to show that there was an overall conspiracy to send a continuous flow of marijuana from Jamaica to Barbados. The Miami seizure was the first of a total of four marijuana shipments, all of which were part of this same on-going conspiracy. Bourne orchestrated this scheme from within the Eastern District of New York by arranging for containers to be shipped from a freight forwarder from New York. As stated, one such container was shipped from his shoe store in Brooklyn. At trial, CW is expected to testify in detail about this first shipment and how this shipment served as the foundation for three future shipments. The three future shipments were virtually identical to the Miami seizure, namely the shipping line, the quantity of marijuana to be placed inside the containers, and the participants. Because the Miami seizure was the initial shipment, evidence concerning the other three shipments is relevant and necessary to prove the full nature and breadth of the on-going conspiracy.[6]

III. Conclusion

For the reasons stated above, the Court should grant the government's request to offer evidence of the three large-scale marijuana shipments and attempted cocaine shipment in its direct case, and deny in its entirety Bourne's request to exclude this evidence, or, in the alternative, to preclude the government

\

---

[6]   In the alternative, because these four shipments are identical in nature, evidence concerning all of these shipments is admissible as 404(b), as part of a common scheme or plan, for all of the reasons stated in the government's motion *in limine*.

from mentioning this evidence in its opening statement and hold "mini hearings" during the trial.

>Respectfully submitted,
>
>LORETTA E. LYNCH
>United States Attorney
>
>By: _____/s/_____
>Toni M. Mele
>Patricia Notopoulos
>Assistant U.S. Attorney
>(718) 254-6138

cc: Counsel (by ECF)
    Clerk of Court (NGG)

7