FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JAN 17 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA

MEMORANDUM
& ORDER

-against-

08-CR-888 (NGG) (VVP)

VICTOR D'ACOSTA BOURNE and
MARIA ALLEYNE,

       Defendants.
----------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

  On October 24, 2011, a jury found Defendant Victor D'Acosta Bourne ("Bourne") guilty of nine charges and not guilty of seven others. (Jury Verdict (Docket Entry # 275).) Bourne now moves, pursuant to Federal Rule of Criminal Procedure 29(c), to vacate his conviction based on insufficiency of the evidence and, as to certain counts, double jeopardy. (Def. Mot. (Docket Entry # 283).) Bourne's motion is granted in part and denied in part as set forth below.

## I. BACKGROUND

  Bourne was tried in connection with his role in a large-scale drug importation and money laundering scheme, which operated out of John F. Kennedy airport between 2000 and 2009. (S-5 Indictment (Docket Entry # 228).) Bourne, an employee of American Airlines, coordinated the importation of cocaine into the United States and directed the activities of baggage handlers and other American employees in connection with this criminal enterprise. Bourne also coordinated a scheme to import large quantities of marijuana into Barbados, and to conceal the proceeds of his narcotics and marijuana smuggling activities. Bourne was tried before a jury beginning on September 27, 2011. (See Docket Entry # 248.) After a month-long trial, the jury found Bourne guilty of the following nine charges:

1

- Count 1—Continuing Criminal Enterprise
- Count 2—Cocaine Importation Conspiracy
- Count 3—Cocaine Distribution Conspiracy
- Count 6—International Marijuana Distribution Conspiracy
- Count 7—Attempted International Distribution of Marijuana
- Count 8—Conspiracy to Distribute Marijuana
- Count 13—Cocaine Importation (on or about November 22, 2008)
- Count 14—Attempted Possession of Cocaine (on or about November 22, 2008)[1]
- Count 15—Money Laundering Conspiracy

(See Jury Verdict.) The jury found Bourne not guilty of seven other counts.[2] Maria Alleyne, Bourne's co-Defendant and mother, was acquitted of all charges brought against her.[3]

Following trial, Bourne moved to vacate his conviction pursuant to Federal Rule of Criminal Procedure 29(c) on several grounds. (See Def. Mot.) First, Bourne argues that the evidence presented at trial was insufficient to support Count 1, the Continuing Criminal Enterprise ("CCE") charge brought pursuant to 21 U.S.C. § 848(c). Bourne argues that the Government failed to establish (1) that he made "substantial revenues" from the CCE, and (2)

---

[1] In the Rule 29(c) Motion, defense counsel includes in this list—and challenges—Count 9 rather than 14. (See Def. Mot. at 1 (challenging "Count 9 – Attempted Possession of Cocaine – November 22, 2008").) This appears to be in error. The jury found Bourne not guilty of Count 9, which charged Bourne with Cocaine Importation on or about October 25, 2008; but the jurors found Bourne guilty of Count 14, which charged him with Attempted Possession of Cocaine on or about November 22, 2008. (See Jury Verdict at 7, 10.)

Other than including them in his list of challenged counts, Bourne's Rule 29(c) Motion makes no argument about either of the counts that relate to criminal activity on or about November 22, 2008: Counts 13 and 14. Bourne states that his motion "for dismissal of these two counts [functions] to preserve his argument that there was no evidence that Bourne arranged for the importation of cocaine on an AA flight that day." (Def. Mot. at 1.)

[2] The jury returned a verdict of not guilty on the following counts:

- Count 4—Cocaine Importation Conspiracy (on or about November 5, 2005)
- Count 5—Attempted Possession of Cocaine with Intent to Distribute (on or about November 5, 2005)
- Count 9—Cocaine Importation (on or about October 25, 2008)
- Count 10—Possession of Cocaine with Intent to Distribute (on or about October 25, 2008)
- Count 11—Cocaine Importation (on or about October 26, 2008)
- Count 12—Possession of Cocaine with Intent to Distribute (on or about October 26, 2008)
- Count 16—Structuring Conspiracy

(See Jury Verdict.)

[3] Maria Alleyne was charged with money laundering conspiracy, structuring conspiracy, and structuring in connection with the proceeds of Bourne's drug smuggling, but was not charged with any drug offenses. (See S-5 Indictment at 21-26.)

2

that the "numerosity" element of this charge was met, i.e. that Bourne supervised five or more individuals involved in the criminal enterprise. (Def. Mot. 2, 5-8.)

Second, Bourne argues that the evidence was insufficient to support his conviction for International Marijuana Conspiracy (Count 6) and Attempted International Distribution of Marijuana (Count 7). With regard to these charges, Bourne argues that the Government failed to establish that he had knowledge that the shipment of marijuana would be imported into the United States or into waters within a distance of twelve miles of the coast of the United States, as 21 U.S.C. § 959 requires. (Def. Mot. at 4.)

Third, Bourne argues that his conviction under 18 U.S.C. § 1956 for Money Laundering Conspiracy (Count 15) should be vacated. Bourne argues that the jury's acquittal of his co-Defendant Alleyne leaves him with no named co-conspirator, and that the Government has failed to present evidence connecting him to any other unnamed co-conspirator. (Def. Mot. at 5.)

Finally, Bourne argues that the drug conspiracy charges in Counts 2, 3, 6 and 8 are lesser included offenses that must be vacated if the CCE conviction stands. (Def. Mot. at 3.)

## II. DISCUSSION

### A. Sufficiency of the Evidence

#### 1. Legal Standard

Pursuant to Rule 29(c), a defendant may move the court for a judgment of acquittal after the jury returns its verdict. Fed. R. Crim. P. 29(c). In challenging the sufficiency of the evidence, the defendant bears "a very heavy burden." United States v. Puzzo, 928 F.2d 1356, 1361 (2d Cir. 1991). The court must draw all reasonable inferences in the Government's favor. Id. If "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the court must uphold the conviction. Id. (quoting Jackson v. Virginia, 443

3

U.S. 307, 319 (1979)). "The test is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt." United States v. Chang An-Lo, 851 F.2d 547, 554 (2d Cir. 1988) (citations and internal quotations omitted)).

### 2. Count 1 – Continuing Criminal Enterprise

The jury found Bourne guilty of engaging in a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(c). (See Jury Verdict at 1.) To be criminally liable under this provision, a person must act "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(c)(2)(A); see Rutledge v. United States, 517 U.S. 292, 300 (1996) ("[T]he phrase 'in concert' signifies mutual agreement in a common plan or enterprise"). Additionally, the defendant must "obtain[] substantial income or resources" from the CCE. 21 U.S.C. § 848(c)(2)(B); see also United States v. Aiello, 864 F.2d 257, 263-64 (2d Cir. 1988) (enumerating elements of CCE). Bourne argues that the evidence presented was insufficient to satisfy either of these requirements. (Def. Mot. at 2.) Viewing the evidence in the light most favorable to the Government, the court finds that a reasonable jury could have fairly and logically concluded that both of these elements of the CCE charge were proven beyond a reasonable doubt.

*Numerosity:* In order to prove that a defendant acted "in concert with five or more other persons," the Government need not prove "the specific identity of all five individuals subject to the defendant's direction." United States v. Harris, 209 F.3d 156, 160 (2d Cir. 2000). Nor is the Government required to show that the defendant acted in concert with each of the people at the same time, or that the five people acted in concert with one another. United States v. Aiello, 864

4

F.2d at 264. The Government must, however, show that the defendant occupied a "position of organizer, a supervisory position, or any other position of management" with respect to at least five other people involved in the CCE. 21 U.S.C. § 848(c)(2)(A).

Bourne concedes that the Government presented evidence that he occupied a supervisory position with regard to *four* other people: Matthew James, Clive Beckford, O'Neill "Shabba" Roberts, and Bryan Whyte. (Def. Mot. at 5-6; Def. Reply (Docket Entry # 291) at 1.) He contends, however, that the Government failed to present evidence that establishes that he supervised a fifth. Contrary to this assertion, a reasonable jury could have found based on the evidence at trial that Bourne supervised any one of a number of other individuals in connection with his drug importation scheme.

Miguel Bozza and Steven Zografos both worked as "crew chiefs," whose responsibilities included assigning other employees to unload American Airlines flights. Both Bozza and Zografos testified at trial that Bourne paid them to assign his "crew" to a specific flight used to transport narcotics: Flight 1384. (Tr. 1208-16 (Bozza), 1831-42 (Zografos).) Both witnesses testified that they were aware that Bourne sought to have his crew assigned to Flight 1384 so that this crew could retrieve narcotics, and both Bozza and Zografos testified that they received their instructions and payment directly from Bourne. (Id.) This type of relationship is sufficient to establish supervisory control. See United States v. Roman, 870 F.2d 65, 73 (2d Cir. 1989) ("[G]enerally a management or supervisory relationship within the meaning of § 848 is created when one person gives orders or directions to another person who carries them out." (internal quotations omitted).) Bourne's characterization of Bozza and Zografos as "independent contractors" (see Def. Mot. at 6) in no way alters this analysis.

Bourne's characterization of Eddie Ascensio as a "stakeholder" or "independent contractor" (see id.) is likewise unavailing. Ascensio, another American Airlines employee, testified that he and his crew "pulled" cocaine off of aircraft for Bourne and that Bourne instructed him as to when and how to do so. (Tr. 642, 648-50, 653, 673-77.) That Bourne paid Ascensio in cocaine, that Ascensio and his crew also performed work for other drug smugglers, and that Ascensio himself supervised others does not alter the evidence that Bourne directly managed—and compensated—Ascensio. Additionally, the Government presented evidence that Bourne supervised Giorgilio Estevez, who in turn oversaw his own "crew" of Dominican workers at American Airlines. Estevez testified that in 2003, Bourne paid him $1,000 to "pull" narcotics from a flight. (Tr. 1654-55.) Estevez also testified that on November 22, 2008, he was arrested while attempting to pull narcotics from Flight 1384 for Bourne again—and that Bourne had directed him to do so and had promised to pay him for his services. (Tr. 1661-76.)

Finally, the Government presented evidence regarding Bourne's supervision of two non-American Airlines employees, who worked with Bourne to ship marijuana between Jamaica and Barbados: Phillip Hanson and Steven Lee. At trial, Hanson testified that Bourne paid him to transport drug money from Jamaica to Barbados at a rate of $70,000 per successful shipment. (Tr. 922-34.) Hanson also testified that Lee acted as a liaison between him and Bourne, that Bourne paid Lee to secure the bills of lading for the containers in which the marijuana was shipped, and that—in 2006—Lee obtained 1200 pounds of marijuana on Bourne's behalf. (Tr. 898-901.) Hanson testified that both he and Lee were paid by Bourne and operated pursuant to Bourne's direction.

There was sufficient evidence for the jury to rationally conclude that any of these six individuals—in addition to the four individuals that Bourne concedes were his supervisees—

were supervised, organized or managed by Bourne. Therefore, the court finds that Bourne has not satisfied his burden with regard to the numerosity requirement of § 848.

*Substantial Revenues:* Congress has not set forth a minimum amount necessary to show that a CCE defendant has "obtained substantial income or resources," see 21 U.S.C. § 848(c), and the Second Circuit "ha[s] held that as little as $2,000 may be sufficient." United States v. Casamento, 887 F.2d 1141, 1159 (2d Cir. 1989) (citing United States v. Losada, 674 F.2d 167, 173 (2d Cir. 1982)). The Government may prove substantial income with direct or circumstantial evidence, and the quantity of drugs itself may operate as proof of this element. See, e.g. United States v. Casamento, 887 F.2d at 1159 (finding circumstantial evidence sufficient); United States v. Roman, 870 F.2d 65, 75 (2d Cir. 1989) (considering quantity and value of drugs and volume of sales); United States v. Sisca, 503 F.2d 1337, 1346 (2d Cir. 1974) (finding circumstantial evidence regarding quantity of heroin sufficient). Furthermore, proof of gross income—as opposed to net profits—may be sufficient. United States v. Flaherty, 295 F.3d 182, 198-99 (2d Cir. 2002); United States v. Roman, 870 F.2d at 75.

With regard to the substantial revenues requirement, Bourne argues that he earned no revenue from certain intercepted shipments (the cocaine shipment that was seized on November 22, 2008 and an intercepted marijuana shipment), and that there is no "direct[]" evidence in the record of substantial revenues earned from the successful drug shipments. (Def. Mot. at 7.) First, as to the intercepted shipments, § 848(c) does not require that a defendant obtain substantial income from *each* violation, but from all of the violations as a whole. Richardson v. United States, 526 U.S. 813, 823 (1999) ("[R]equirements [of § 848] must be met with respect to the *series,* which, at a minimum, permits the jury to look at all of the agreed-upon violations in combination"); United States v. Torres-Laranega, 476 F.3d 1148, 1158 (10th Cir. 2007) (citing

7

Richardson) ("[T]he government need not prove that a CCE defendant obtained substantial income or resources from *each* violation that comprises the relevant series. . . [but] that the defendant obtained substantial income or resources from the series of violations viewed as a whole." ).

Second, there is significant evidence in the record from which a rational jury could have concluded that Bourne earned substantial revenues as a result of the series of CCE violations. Members of Bourne's crew—James, Beckford, and Ascensio—testified that they pulled multiple kilograms of cocaine off of multiple flights for Bourne over a period of years. (See, e.g. Tr. 379-418 (James); Tr. 1089, 1092-1118 (Beckford); Tr. 629-654 (Ascensio).) Zografos testified that Bourne paid him to arrange flight schedules so that Bourne's crew could unload narcotics on approximately 50 occasions. (Tr. 1834-35.) And, the Government elicited testimony from two witnesses—Ascensio and expert witness Frank DiGregorio—that the wholesale value of cocaine during the relevant period ranged from $17,000 to $20,000 per kilogram. (Tr. 644 (Ascensio), 788 (DiGregorio).) This evidence provides a sufficient basis from which the jury could have concluded that Bourne "obtained substantial income or resources" from his drug smuggling operation.[4] Bourne's contention that more "direct[]" evidence is required is without merit.

---

[4] Although the court finds sufficient evidence in the record as to this element, the court rejects the Government's calculation of the Bourne organization's approximate total revenues. The Government contends that Bourne's organization trafficked approximately 350 kilograms of cocaine, with a wholesale value of $5,950,000. (Gov't Opp. (Docket Entry # 290) at 13.) The Government arrives at this estimate by multiplying 50 (the number of drug shipments that Zografos estimated he assigned) by $17,000 per kilogram (pursuant to Ascensio and DiGregorio's testimony) by 7 kilograms (the number of kilograms of cocaine seized in the shipment that was intercepted on November 22, 2008). Although the Government assumes that 7 kilograms was "the average amount of cocaine in a shipment," (Gov't Opp. at 13), there is no evidence in the record to support this assumption. Whether the November 22, 2008 shipment fairly represents the average shipment that the Bourne organization imported over the course of several years is a matter of pure speculation. Nonetheless, the evidence at trial was sufficient to prove that Bourne was responsible for many shipments of many kilograms of cocaine and that the total value of the drugs was substantial. A precise estimate is not necessary.

### 3. Counts 6 and 7 – International Marijuana Distribution Conspiracy and Attempted International Distribution of Marijuana

Bourne was convicted of engaging in International Marijuana Distribution Conspiracy between October 2006 and April 2009 (Count 6) and Attempted International Distribution of Marijuana on December 18, 2006 (Count 7).[5] (Jury Verdict at 6-7.) Title 21 of the United States Code § 959 makes it illegal to "manufacture or distribute a controlled substance... (1) intending ... or ... (2) *knowing* that such substance or chemical will be unlawfully imported in the United States or into waters within a distance of 12 miles of the coast of the United States." 21 U.S.C. § 959(a)(1)-(2) (emphasis added). Bourne contends—as he did in his Rule 29(a) motion—that the Government has failed to present evidence that he "*knew* that the marijuana would be unlawfully imported into the United States or within its 12-mile territorial waters." (Def. Mot. at 4.) To satisfy the requirements of § 959(a), the Government must prove beyond a reasonable doubt that the defendant had actual, as opposed to constructive, knowledge or intent that the controlled substance would be imported into the United States. United States v. Romero-Padilla, 583 F.3d 126, 192 (2d Cir. 2009). Proof of actual knowledge, however, "may take the form of circumstantial as well as direct evidence." Id. (quoting United States v. Chan Chun-Yin, 958 F.2d 440, 443 (D.C. Cir. 1992)).

At trial, the Government showed that Bourne—with the assistance of Hanson and Lee—coordinated several large-scale shipments of marijuana between Jamaica and Barbados. (See, e.g., Tr. 881-82.) Using the New York-based freight company ITN and the shipping line CMA GCM, Bourne had cargo containers shipped from Jamaica (where marijuana was hidden inside the containers) to Barbados (where the marijuana was distributed). (Tr. 922-27.) Between these two locations, ships bearing the containers made stops in the United States at the Port of Miami.

---

[5] The December 18, 2006 shipment of marijuana was intercepted by authorities at the Port of Miami. (See, e.g., Tr. 910-13.)

The Government presented substantial circumstantial evidence from which a jury could have rationally concluded that Bourne had actual knowledge that these shipments of marijuana would enter the United States in Miami: Both ITN and CMA CGM made tracking information readily available to customers. (Tr. 817, 822-25 (testimony of ITN representative); Tr. 863, 866 (testimony of CMA CGM representative).) An ITN representative who dealt directly with Bourne testified that he always discussed "actual vessel routes" with customers when booking. (Tr. 811, 814, 819.) Representatives from both companies testified that there are only two shipping routes that take cargo containers to Barbados, and both operate on set routes with stops in Miami. (Tr. 812-814, 860-66.) Additionally, the Government introduced shipping records that showed that, on some occasions, Bourne boarded cargo on this same shipping line during a vessel's stopover in Miami. (See Gov't Exh. 64, 64a-k.)

Finally, Hanson testified that he participated in a conference call with Bourne and others following the December 2006 seizure of a shipment of marijuana during the vessel's stop in Miami.[6] (Tr. 910-913.) Even if Bourne was unaware of the Miami stop prior to this time, a jury could have concluded that this seizure and the resulting call were proof of Bourne's knowledge with regard to the conspiracy charged in Count 6, which continued through 2009.

Viewing this evidence in the light most favorable to the Government, and considering the record as a whole, the court finds that there was sufficient evidence to support the jury's verdict with regard to Counts 6 and 7.

### 4. Count 15 – Money Laundering Conspiracy

Both Bourne and Alleyne were charged in Count 15 with conspiring to launder money in or about and between January 2000 and October 2010. (S-5 Indictment at 21-22.) The jury found Bourne guilty, and Alleyne not guilty of this count. (Jury Verdict at 10-11.)

---

[6] This seizure provides the factual basis for the attempt charged in Count 7.

10

"In order to convict a defendant of the crime of conspiracy, the government must show that two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and extent." United States v. Torres, 604 F.3d 58, 65 (2d Cir. 2010) ("The essence of conspiracy is agreement."). Bourne argues that because Alleyne—his only named co-conspirator—was acquitted of this count, and because there is no evidence connecting Bourne to any unnamed co-conspirators, the Government failed to prove that "two or more persons" conspired to launder money. (Def. Mot. at 5.)

The Second Circuit has held, however, that "one defendant's conspiracy conviction does not become infirm by reason of jury verdicts of not guilty against all of his alleged co-conspirators." United States v. Acosta, 17 F.3d 538, 545 (2d Cir.1994); see also United States v. Garcia, 882 F.2d 699, 704–05 (2d Cir. 1989). "The jury, though presumed to follow the instructions of the trial court, may make its ultimate decisions 'for impermissible reasons,' such as 'mistake, compromise, or lenity.'" United States v. Acosta, 17 F.3d at 545 (quoting United States v. Powell, 469 U.S. 57, 62–65 (1984); additional citations omitted). Where a jury reaches inconsistent verdicts, their decision to do so is "unreviewable," and "the court is not to try to guess which of the inconsistent verdicts is 'the one the jury 'really meant.''" Id. (quoting Powell).

The court will not speculate as to why the jury in this case found Bourne guilty of money laundering conspiracy, but found Alleyne not guilty. The record is replete with evidence sufficient to establish every element of the conspiracy charged, including that two or more people participated in it. Bourne's motion as to Count 15 is therefore denied.

## B. Lesser Included Offenses

Finally, Bourne argues that if the court upholds the Count 1 CCE conviction, the lesser included conspiracy counts must be dismissed. (Def. Mot. at 8.) The Government agrees. (Gov't Opp. at 19-20.)[7] In Rutledge v. United States, the Supreme Court held that judgments of conviction for both a CCE charge and a predicate conspiracy are impermissible. 517 U.S. 292, 300-01 (1996) (holding that conspiracy is a lesser included offense of the CCE offense). In order to avoid punishing Bourne twice based on the same criminal conduct, the court therefore vacates his conspiracy convictions in Counts 2, 3, 6 and 8. The vacating of these conspiracy counts is conditioned on the CCE conviction being upheld on appeal. See Rutledge, 517 U.S. at 305.

## III. CONCLUSION

As set forth above, Bourne's Motion is GRANTED in part and DENIED in part. In light of Bourne's conviction for engaging in a Continuing Criminal Enterprise, the court finds that his convictions for the predicate conspiracies charged in Counts 2, 3, 6 and 8 must be vacated as lesser included offenses. The court finds that the Government presented sufficient evidence for a rational jury to conclude that Bourne is guilty of the remaining counts. Therefore, Bourne's convictions for Counts 1, 7, 13, 14, and 15 stand. To the extent that the court's opinion does not

---

[7] There is some confusion in the parties' briefing as to which Counts Bourne moves to have vacated as lesser included offenses. Although the Government interprets his motion as moving on this basis with regard to one of the substantive charges (Count 7), it is clear to the court that this confusion is based on a clerical error and that elsewhere in the relevant section of his briefing Bourne refers to Count 8, not Count 7; Bourne acknowledges as much in his Reply. (Def. Reply at 2.)

12

address arguments that Bourne raised in his submissions, including his pro se submissions, the court has considered them and deems them to be without merit.

SO ORDERED.

Dated: Brooklyn, New York
January 17, 2012

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge