UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

-against-

VICTOR D'ACOSTA BOURNE,

Defendant.
-----------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 1 5 2012 ★
BROOKLYN OFFICE

MEMORANDUM
& ORDER

08-CR-888 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

The Government seeks an order of criminal forfeiture against Defendant Victor D'Acosta Bourne, pursuant to Federal Rule of Criminal Procedure 32.2. (Gov't Forfeiture Mem. (Docket Entry # 285).) The Government's motion is GRANTED, and the court enters an order of forfeiture against Bourne for $5,1000,000.

## I. BACKGROUND

On October 24, 2011, after a month-long jury trial, Defendant Victor D'Acosta Bourne ("Bourne") was convicted of the following nine charges:

- Count 1—Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848;
- Count 2—Cocaine Importation Conspiracy, in violation of 21 U.S.C. § 963;
- Count 3—Cocaine Distribution Conspiracy, in violation of 21 U.S.C. § 846;
- Count 6—International Marijuana Distribution Conspiracy, in violation of 21 U.S.C. §§ 963, 959;
- Count 7—Attempted International Distribution of Marijuana, in violation of 21 U.S.C. §§ 963, 959;
- Count 8—Conspiracy to Distribute Marijuana, in violation of 21 U.S.C. § 846;
- Count 13—Cocaine Importation (on or about November 22, 2008), in violation of 21 U.S.C. § 952;
- Count 14—Attempted Possession of Cocaine (on or about November 22, 2008), in violation of 21 U.S.C. § 846; and
- Count 15—Money Laundering Conspiracy, in violation of 21 U.S.C. § 1956(h).

1

(Jury Verdict (Docket Entry # 275).)[1] At trial, the Government presented evidence that from approximately 2000 to 2009, Bourne—an employee of American Airlines—coordinated the importation of large quantities of cocaine into the United States and directed the activities of baggage handlers and other American employees in connection with this criminal enterprise. The Government also presented evidence that Bourne coordinated a scheme to import large quantities of marijuana into Barbados, and to conceal the proceeds of his narcotics and marijuana smuggling activities.

Subsequent to trial, the court granted Bourne's motion to vacate the predicate conspiracies charged in Counts 2, 3, 6 and 8 as lesser included offenses of the Continuing Criminal Enterprise ("CCE") conviction. (Rule 29 Order (Docket Entry # 296) at 12.)[2] Bourne's convictions as to Counts 1, 7, 13, 14, and 15 still stand. (Id.)

Pursuant to Federal Rule of Criminal Procedure 32.2, the Government now seeks an order of forfeiture. (Gov't Forfeiture Mem.) The Government argues that Bourne should be required to forfeit $5,100,000, based on a "very conservative computation" of the proceeds of his drug enterprise. (Id. at 2.) The Government seeks a personal money judgment rather than forfeiture of specific property, and—in light of this fact—no party has sought a jury determination as to forfeiture. (Tr. 2848-50; Gov't Letter of Oct. 24, 2011 (Docket Entry # 265)); see also United States v. Roberts, 696 F. Supp. 2d 263, 270-71 (E.D.N.Y. 2010) (the district court, not a jury, has authority to determine the amount of money that defendant will

---

[1] The jury found Bourne not guilty of seven other counts, and found Bourne's mother and co-Defendant Maria Alleyne not guilty of all of the counts with which she was charged. (See Jury Verdict.)

[2] Although the court found these counts to be lesser included offense of the CCE, the court did *not* find the evidence presented insufficient to support the jury's finding of guilt as to these counts. The court therefore conditioned its decision to vacate the convictions as to Counts 2, 3, 6, and 8 on the CCE conviction being upheld. (Rule 29 Order at 12.)

2

forfeit where Government does not seek forfeiture of specific property), remanded on other grounds, 660 F.3d 149 (2d Cir. 2011).

## II. DISCUSSION

Criminal forfeiture is governed by Federal Rule of Criminal Procedure 32.2, which provides in relevant part:

> (A) *Forfeiture Determinations.* As soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.
>
> (B) *Evidence and Hearing.* The court's determination may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable.

Fed. R. Crim. P. 32.2(b)(1).[3]

The Fifth Superseding (S-5) Indictment included criminal forfeiture allegations against Bourne pursuant to two statutes: 21 U.S.C. § 853 and 18 U.S.C. § 982. (S-5 Indictment (Docket Entry # 228) at 26-29.) The Indictment included an allegation as to Count 1, the CCE charge, pursuant to 21 U.S.C. § 853(a), (p);[4] an allegation as to Counts 2 through 14, the charges related

---

[3] Rule 32.2(b)(1)(B) further provides that "[i]f the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." Fed. R. Crim. P. 32.2(b)(1)(B). Neither party in this case has made such a request, and the court finds that a hearing is not necessary.

[4] Title 21, United States Code, Section 853(a) governs "[p]roperty subject to criminal forfeiture." This section provides:

> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law--
>
> > (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
> >
> > (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

3

to narcotics and marijuana, pursuant to 21 U.S.C. § 853(a), (p); and an allegation as to Count 15, the money laundering conspiracy charge, pursuant to 18 U.S.C. § 982[5] and 21 U.S.C. § 853(p). (Id.) Bourne stands convicted of Counts 1, 7, 13, 14, and 15. (See Jury Verdict; Rule 29 Order at 12.)[6]

Under both of the relevant statutes, forfeiture is mandatory. See 18 U.S.C. § 982 ("The court, in imposing sentence on a person convicted of an offense [enumerated within this statute] ... *shall* order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property" (emphasis added)); 21 U.S.C. § 853 ("Any person convicted of a violation of this subchapter ... *shall* forfeit" property and proceeds obtained from or used in the commission of the violation, or "affording a source of control over, the continuing criminal enterprise" (emphasis added)); see also United States v. Monsanto, 491 U.S. 600, 606 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory" under § 853). Additionally, "[i]n the case of a narcotics conspiracy, this mandatory liability is joint and several among all coconspirators." United States v. Roberts, 660 F.3d 149, 165 (2d Cir. 2011).

---

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

21 U.S.C. § 853(a). Subsection (p) of § 853 sets forth the conditions under which "substitute property" may be forfeited. See 21 U.S.C. § 853(p).

[5] Title 18, United States Code, Section 982 provides in relevant part: "The court, in imposing sentence on a person convicted of an offense in violation of section 1956 ... of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1).

[6] As noted above, the jury also found Bourne guilty of Counts 2, 3, 6, and 8. (See Jury Verdict.)

4

The court must therefore order Bourne to forfeit any property or proceeds derived from or used in the commission of his crimes. The Government requests that the court reduce the award to an in personam money judgment against Bourne (Gov't Forfeiture Mem. at 3), as is permissible in accordance with United States v. Awad, 598 F.3d 76, 78 (2d Cir. 2010). In that case, the Second Circuit held that § 853 permits imposition of a money judgment on a defendant who possesses no assets at the time of sentencing. Awad, 598 F.3d at 78. The court finds that Bourne possesses no assets—as Bourne has attested to this fact in his affidavit seeking counsel under the Criminal Justice Act, and confirmed in his letter submission in response to the Government's forfeiture motion. (See Def. Forfeiture Opp. (Docket Entry # 297) at 2.) Therefore, an in personam forfeiture judgment is appropriate.

The Government bears the burden of establishing the amount of proceeds subject to forfeiture by a preponderance of the evidence. See United States v. Roberts, 660 F.3d at 166; see also United States v. Basciano, 03-CR-929 (NGG), 2007 WL 29439, at *2 (E.D.N.Y. Jan. 4, 2007) (Because criminal forfeiture is "an aspect of sentencing," Libretti v. United States, 516 U.S. 29, 49 (1995), issues of fact relating to forfeiture must be established by a preponderance of the evidence. . . ."). The calculation of the amount of the forfeiture "may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); see also United States v. Capoccia, 503 F.3d 103, 109 (2d Cir. 2007); United States v. Gaskin, 364 F.3d 438, 462-63 (2d Cir. 2004). As the Second Circuit Court of Appeals has held, the court's calculation as to amount need not be exact:

> [T]he law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture. Indeed, because the purpose of forfeiture is punitive rather than restitutive, district courts are not required to conduct an investigative audit to ensure that a defendant is not deprived of a single farthing more than his criminal

5

acts produced. Rather, district courts may use general points of reference as a starting point for a forfeiture calculation and make reasonable extrapolations supported by a preponderance of the evidence.

United States v. Roberts, 660 F.3d at 166 (2d Cir. 2011); see also United States v. Basciano, 2007 WL 29439, at *2 ("Although the total amount of forfeited assets may be determined by 'conservatively estimating' the revenue regularly collected or received, the evidence of such revenue may not be overly speculative." (quoting United States v. Corrado, 227 F.3d 543, 547-48 (6th Cir. 2000))).

Here, the forfeiture judgment against Bourne can be calculated by multiplying the approximate number of shipments of cocaine for which he was responsible by the approximate weight of those shipments by the wholesale value of cocaine during the relevant time period.[7] The court finds that the Government has met its burden of proving each of these values by a preponderance of the evidence.[8]

*Number of Shipments:* At trial, multiple witnesses testified that they and others "pulled" shipments of cocaine off of numerous flights for Bourne over a period of years. Clive Beckford testified that he personally unloaded ten to twenty shipments of cocaine (Tr. 1092-96); Eddie Ascensio testified that he unloaded twenty-five to thirty shipments (Tr. 644); and Matthew James testified that he unloaded at least eight shipments between 2003 and 2008 (see Tr. 379-418). Two American Airlines employees who were responsible for assigning baggage handlers to certain flights—Miguel Bozza and Steven Zografos—also testified that Bourne paid each of them to assign his "crew" to unload

---

[7] In United States v. Roberts, 660 F.3d 149, the Second Circuit approved of this method of calculation. Roberts provides a clear roadmap for the court here, as that case considered a forfeiture judgment against one of Bourne's co-conspirators who participated in not only the same *type* of criminal activity, but much of the same conduct for which Bourne was convicted.

[8] The Government's calculation is based only on the narcotics offenses, although Bourne was convicted of other offenses, including marijuana trafficking.

6

flights that were carrying narcotics. (Tr. 1208-16 (Bozza), 1831-42 (Zografos).) Zografos testified that he was paid by Bourne or Bourne's agents to make specific flight assignments on approximately 50 occasions. (Tr. 1832-35.) On this basis, the court finds that Bourne participated in the importation of at least 50 shipments of drugs.

*Weight*: Evidence adduced at trial regarding the weight of each shipment of cocaine varied significantly. For instance, James testified that the shipments of narcotics that he unloaded on Bourne's behalf contained between one and 100 one-kilogram "bricks" of cocaine each. (Tr. 379-418.) Beckford testified that the shipments of cocaine that he unloaded weighed approximately fifteen to twenty kilograms each. (Tr. 1089, 1092-1118.) In its motion, the Government proposes a weight multiplier of six kilograms per shipment. (Gov't Forfeiture Mem. at 8-9.) This estimate is based on the weight of narcotics in two shipments that United States Customs and Border Protection ("CBP") officers intercepted: One of these shipments contained five kilograms of narcotics (Tr. 1184 (testimony of CBP Officer Michael Roessel regarding Nov. 5, 2005 seizure); Gov't Ex. 32, 32(c), 33(a), 33(b)); and the other contained seven kilograms of narcotics (Tr. 321, 331-38 (testimony of CBP Officer Frank Morrelli regarding November 22, 2008 seizure); Gov't Ex. 3D7). The court agrees that the weight of the two seized shipments of narcotics provides a sufficiently reliable basis for approximating the weight of other shipments.[9] The court further agrees that six kilograms represents a very conservative

---

[9] This finding is not in contradiction to the court's Order of January 17, 2012, in which it rejected the Government's argument that the court should assume that the seven-kilogram shipment was "average" for purposes of determining whether Bourne had obtained substantial income or resources from his criminal activities. (See Mem. & Order (Docket Entry # 296) at 8 n.4.) First, that calculation varied from the current one in that a different standard of proof ("beyond a reasonable doubt" as opposed to "by a preponderance of the evidence") applied. Second, as the court noted in its earlier opinion, no calculation of a dollar amount was necessary at that juncture; the court was required to determine only if Bourne's income had been "substantial." Finally, as noted above, in calculating the forfeiture amount, the court may rely on conservative estimates—as it does here. See also Roberts, 660 F.3d at 166 (The Government is not "obliged to adduce 'drug records' or evidence of specific 'monetary transactions' to support a

estimate of the total weight of narcotics that Bourne smuggled—particularly in light of James and Beckford's testimony suggesting that other shipments contained even greater quantities of narcotics. The Government has met its burden with regard to this aspect of the forfeiture determination, and the court will therefore use six kilograms per shipment in its calculation.

*Value:* The Government elicited testimony from three witnesses—Eddie Ascensio, Aaron Greaves, and expert witness Frank DiGregorio—regarding the wholesale value of cocaine during the relevant period.[10] Ascensio testified that the wholesale value was $17,000 to $18,000 per kilogram (Tr. 644); Greaves testified that it was approximately $20,000 per kilogram (Tr. 1416); and, DiGregorio testified that it was $17,000 to $20,000 per kilogram (Tr. 788). The court therefore finds that, at the time of Bourne's criminal conduct, the wholesale value of cocaine was at least $17,000 per kilogram.

Using these figures, the court finds that a forfeiture amount of $5,100,000—or 50 shipments times 6 kilograms per shipment times $17,000 per kilogram—is appropriate.

---

preponderance finding as to the dollar amount realized from conspirators' distribution of smuggled cocaine.") The court has chosen multipliers at the low end of the evidence presented, and has omitted from its calculation any additional (and potentially substantial) proceeds that Bourne derived from his marijuana trafficking scheme.

[10] In Roberts, the Court of Appeals held that using the wholesale value of imported drugs as a multiplier is appropriate unless there is evidence of street-level distribution (in which case retail value is the appropriate multiplier). 660 F.3d at 167. In the instant case, the Government has not proven by a preponderance of the evidence—or attempted to prove—that the court should employ retail-level value. Wholesale value is therefore the appropriate measure.

## III. CONCLUSION

For the foregoing reasons, the court GRANTS the Government's motion. Bourne shall forfeit $5,100,000, as detailed in the attached Order of Forfeiture.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
February 14, 2012

NICHOLAS G. GARAUFIS
United States District Judge

9